LEWIS, C.J.,
concurring in result only.
I concur in result only based on my belief that the majority opinion violates the fundamental maxim of judicial restraint which dictates that “[w]hen a case may be resolved on grounds other than constitutional grounds, the Court will ordinarily refrain from proceeding to decide the constitutional question.” Fla. Bar v. Gold, 937 So.2d 652, 655 (Fla.2006); see also Gaudet v. Fla. Bd. of Prof'l Eng’rs, 900 So.2d 574, 581 (Fla. 4th DCA 2004). The United States Supreme Court has endorsed and utilized this maxim as well, concluding that prior to reaching any constitutional questions, courts must first consider nonconstitutional grounds for a decision. See Jean v. Nelson, 472 U.S. 846, 854, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985); see also Amer. Foreign Serv. Ass’n v. Garfinkel, 490 U.S. 153, 161, 109 S.Ct. 1693, 104 L.Ed.2d 139 (1989) (remanding case to federal district court and noting that “the District Court should not pronounce upon the relative constitutional authority of Congress and the Executive Branch unless it finds it is imperative to do so”).
To the extent that the majority contends that this maxim does not apply to the circumstances governing the instant case, I disagree. While judicial restraint may be applied in cases in which a court chooses to avoid addressing the constitutionality of a statute or conduct by resolving the dispute on nonconstitutional grounds, this longstanding maxim has never been interpreted to apply only in such cases, and the majority provides no authority to support such principle. Rather, the maxim broadly encompasses any issue that touches upon rights or powers under the Florida or the United States Constitutions.
*1135 Indeed, contrary to the majority view, this Court has applied the maxim of judicial restraint to cases that do not involve a constitutional challenge to a statute or conduct by a government official. In Metropolitan Dade County Transit Authority v. State Department of Highway Safety & Motor Vehicles, 283 So.2d 99 (Fla.1973), at issue was whether county-owned buses should be taxed under the Florida Statutes as “Local Buses” or “Exempt or Official” vehicles. See id. at 100. The trial court entered judgment in favor of the Department. See id. On review before this Court, we noted:
In reaching his decisions, the trial judge discussed Fla. Const, art. VII, § 1(b) and (c) in stating that real property and tangible personal property including motor vehicles are exempt from state ad valorem taxation. By explaining these constitutional provisions, the judge construed language in our constitution giving us appeal jurisdiction.
Id. However, we nonetheless declined to resolve the case under constitutional principles and, instead, followed the maxim of judicial restraint:
[W]e recognize the well-settled rule that precludes us from deciding constitutional questions whenever the case can be disposed of on a non-constitutional ground. In re Estate of Sale, 227 So.2d 199, 201 (Fla.1969). This principle applies here because our decision will not require an interpretation or an explanation of constitutional language; it turns on matters of statutory construction.
Id. at 101.
In another case, involving noncriminal infractions of the Florida Uniform Traffic Code (State v. Carr, 373 So.2d 657 (Fla. 1979)), the trial court vacated judgments, holding in part that “article V, section 20(c)(4), Florida Constitution, does not confer jurisdiction on the county court to hear noncriminal traffic infractions.” Id. at 657. On review of the county court order here, this Court concluded that jurisdiction existed because the lower court “construed provisions of our state constitution.” Id. However, we reversed the order as moot on the basis that the defendants’ motions to vacate were untimely filed. See id. at 658-59. In doing so, this Court relied on Transit Authority for the principle that it would not “reach the issue of either the jurisdiction of county courts to hear noncriminal traffic infractions or whether it is a violation of separation of powers for a judicial officer to sit as an official in chapter 318 proceedings.” Id. at 659.
These cases demonstrate that the Court simply has not applied the maxim of judicial restraint exclusively to constitutional challenges of statutes or conduct, nor established such concept as the law of Florida. Rather, we have utilized this principle to avoid addressing constitutional issues such as taxation and the jurisdiction of county court judges. Accordingly, judicial restraint is equally applicable to the instant proceeding, and I do not subscribe to the majority’s attempt to pigeonhole the applicability of this maxim where it has not previously been so limited. The majority has unnecessarily limited that restraint today.
The majority’s analogy of the instant situation to jurisdictional determinations is unavailing because it is undisputed that this Court has jurisdiction to review JQC proceedings. See art V, § 12(c), Fla. Const. Having established our jurisdiction, the principle of judicial restraint then applies to ensure that the Court not resolve an issue on a constitutional basis unless “it [is] imperative to do so.” Garfinkel, 490 U.S. at 161, 109 S.Ct. 1693. Because there is a nonconstitutional basis upon which to resolve the attorney’s fees *1136 issue presented by the instant case (i.e., by application of the Thornber test), the maxim of judicial restraint does indeed apply.
Applying this maxim to the instant matter, I would conclude that the issue of our constitutional authority to grant attorney’s fees in JQC proceedings need not be considered because the proceedings in the instant matter fail to meet the initial requirements of the Thomber doctrine. The first prong of the test announced in Thom-ber dictates that “[f]or public officials to be entitled to representation at public expense, the litigation must (1) arise out of or in connection with the performance of their official duties.” Thornber, 568 So.2d at 917. The JQC proceedings in the instant matter do not satisfy this requirement because the allegations in the formal charges related to Judge Holder’s submission of an allegedly plagiarized paper to the United States Air Force Air War College. Judge Holder enrolled in the Air War College for the purposes of advancing his military career. Neither Judge Holder’s attendance at nor alleged submission of a plagiarized paper to the Air War College are connected with Judge Holder’s official judicial duties. This is not a case where the charges arose from a judge’s intemperate behavior with regard to the parties involved in a case, nor is this an instance where the charges addressed a lack of judicial impartiality in deciding a matter. These situations are examples of conduct that may be directly related to the official duties of a judge that may become the subject of formal charges before the JQC.
Therefore, the JQC proceedings in the instant matter do not satisfy the initial test announced in Thornber, and Judge Holder’s motion for attorney’s fees should be denied on that ground. This resolution would avoid the constitutional issue addressed by the majority opinion, and would respect the long-standing maxim of judicial restraint, which is clearly applicable to the subject matter of the instant proceeding.